Argued and submitted July 16, 2008, affirmed April 1, 2009

Kenneth THOMPSON
and Robert Klein,
*Petitioners,*

*v.*

LAND CONSERVATION AND DEVELOPMENT
COMMISSION;
Seven Hills Properties, Inc.;
and Powerline Ranch, LLC,
*Respondents.*

Land Conservation and Development Commission
06SUSTAIN001717; A134989

204 P3d 808

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent Land Conservation and Development Commission. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

John M. Junkin argued the cause for respondent Seven Hills Properties, Inc. With him on the joint brief were Lisa E. Lear and Bullivant Houser Bailey PC, and Patricia Sullivan and Corey Byler Rew Lorenzen & Hojem LLP for respondent Powerline Ranch, LLC.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this case is a decision of the Land Conservation and Development Commission (LCDC) approving a Umatilla County ordinance reducing the minimum parcel size for a 1,682-acre area of farmland from 160 acres to 40 acres. The purpose of the reduction, commonly known as a "go-below" amendment, is to allow for the creation of vineyards and related wineries. On judicial review, petitioners contend that LCDC erred in approving the go-below amendment because creating smaller parcels will adversely affect the county's dominant commercial agricultural enterprise, dryland wheat farming. Petitioners also contend that LCDC erred in using a "delayed signing" process to approve the county ordinance. We affirm.

## I. FACTS

The relevant facts are undisputed. Respondents Seven Hills Properties and Powerline Ranch (applicants) own adjacent agricultural properties in northern Umatilla County that, together, comprise the 1,682 acres that are the subject area in this case. Historically operated as a dryland wheat farm, the subject area is zoned exclusive farm use (EFU) and is subject to a minimum parcel size of 160 acres. It is also situated in the federally recognized Walla Walla Valley American Viticultural Area (AVA), which includes the southeastern portion of Washington and the northeastern portion of Oregon. The boundaries of the AVA relate to distinguishing geographical features such as climate, elevation, and soil and other physical characteristics that make it suitable for the cultivation of high-quality wine grapes. Adjacent to the subject area is Seven Hills Vineyard, a successful vineyard that sells its grapes to wineries throughout the Pacific Northwest.

Applicants proposed a go-below amendment to the county, seeking to reduce the minimum parcel size for the subject area from 160 acres to 20 acres. The purpose of their request was to make smaller parcels available for purchase and use as vineyards and related wineries. Although they did not seek to change the subject area's zoning designation, the county's review process prompted community concerns about the potential impact of the 20-acre minimum parcel size on

nearby agricultural lands. In response, applicants proposed a mix of 20- and 40-acre parcels for the subject area. The county then approved the revised proposal and adopted an ordinance to that effect.

The county forwarded the ordinance to the Department of Land Conservation and Development (DLCD) for review of the ordinance's compliance with the state's applicable land use policies. Among the information that the county provided to DLCD were data about the sizes and uses of the properties adjacent to and near the subject area. The county also submitted a breakdown of the county's annual sales of various crops and livestock, along with a discussion about the county's production of wheat, orchard produce, grapes, and wine.

On DLCD's request, applicants provided information about the vineyards in the Walla Walla Valley AVA, including each vineyard's deeded and planted acreage. According to applicants' list, Oregon vineyards in the AVA are, on average, 39.9 deeded acres in size, with an average of 18.7 planted acres. Applicants' list did not include the deeded acreage for three of the Oregon vineyards, although the list included the planted acreage figures for those vineyards (all 18 acres or less). The Oregon Department of Agriculture obtained deeded acreage information for two of those vineyards (400 acres and 802 acres), which raised the deeded acreage average of the Oregon vineyards in the AVA to nearly 80 acres. All but eight of the 31 Oregon vineyards are 40 acres or smaller in deeded acreage.

DLCD set out its analysis in its Director's Report. It concluded that a 40-acre minimum parcel size for the subject area complies with the applicable land use regulations that require a minimum parcel size for EFU land smaller than 80 acres to be "appropriate to maintain the existing commercial agricultural enterprise within the area." While recognizing that some nearby agricultural parcels are as small as 10 acres, DLCD rejected the possibility of allowing any 20-acre parcels in the subject area: "[T]he subject site is within an area of both large and small farms, and the goal and rule require that the chosen minimum not be based on the smallest parcels but must maintain both the large and

small farms. A 40 acre minimum will satisfy this requirement." Although DLCD acknowledged that the deeded acreage of Oregon Walla Walla Valley AVA vineyards averages 80 acres, DLCD stated that the supplied information demonstrated "that grapes are being produced in ownerships of about 40 acres." According to DLCD, "the smallest minimum parcel size capable of maintaining the existing agricultural enterprise of producing quality wine grapes is 40 acres." Accordingly, DLCD recommended to LCDC that it reject the proposed mix of 20- and 40-acre parcels, but approve a 40-acre minimum parcel size for the subject area.

LCDC reviewed the information provided to DLCD. LCDC also received comments from the county, one of the applicants, members of the public, the Oregon Department of Agriculture, and DLCD. Petitioners are two individuals who opposed the go-below amendment.

After its own review, LCDC agreed with DLCD's recommendation, and issued an order rejecting the proposed mix of 20- and 40-acre parcels but approving a 40-acre minimum parcel size for the subject area. In its order, LCDC adopted and incorporated by reference the DLCD Director's Report. As a factual matter, LCDC found that the subject area includes a north slope and "elevations that are apt for growing grapes and which are less susceptible to damage from freezing temperatures than lower elevations along the valley floor." LCDC also found as fact that "[e]xisting, successful vineyards are located nearby and adjacent to the subject area."

In assessing the proposal's compliance with the state's general agricultural policy, LCDC referred to the proposal as "facilitating the establishment of vineyards as commercial agricultural enterprise." In its discussion about the applicable land use planning goal, LCDC noted that "[DLCD] concluded that the information submitted on the existing agricultural enterprises shows that grapes are being produced in ownerships of about 40 acres." In that same vein, LCDC noted that

"[DLCD] concluded that the County had not demonstrated that a 20-acre minimum parcel size would not pose a risk to existing commercial agricultural practices in the area.

Based on land needs for agricultural infrastructure, [DLCD] concluded that it is unlikely that a 20-acre parcel would be capable of supporting a 20-acre vineyard and also that a 20-acre parcel is vulnerable to rural residential activity not related to agriculture. * * * The Commission concludes that the County has not demonstrated that a 20-acre minimum lot or parcel size will maintain the existing commercial agricultural enterprise within the area of the County. The Commission further concludes that the County has demonstrated that a 40-acre minimum parcel size for the subject area will maintain[ ] the existing commercial agricultural enterprise within the area of the County."

According to LCDC, a 40-acre minimum parcel size for the subject area is "capable of maintaining the existing agricultural enterprise for producing quality wine grapes." Moreover, LCDC concluded, a 40-acre minimum parcel size

"is appropriate to both maintain existing commercial agricultural enterprises within the area and prevent the division of farmland into parcels that are too small to contribute to the area's commercial agriculture, recognizing that a 40-acre minimum parcel size may allow creation of parcels smaller than the size of some existing farms."

LCDC concluded that the county's go-below amendment was consistent with the applicable law, contingent on the county repealing the existing ordinance and replacing it with one that provides for a minimum lot size no smaller than 40 acres. LCDC then authorized the DLCD director to approve the county's amendment "with a delayed signing" that authorized him to do so upon the county's submission of an adopted ordinance that complies with the foregoing conditions.

Petitioners filed a petition for judicial review of LCDC's order. After the petition was filed, the county adopted an amended ordinance that complied with LCDC's order. Petitioners appealed the amended ordinance to the Land Use Board of Appeals (LUBA), which rejected petitioners' challenge. Petitioners did not seek review of that decision, and its lawfulness is not before us in this case.

## II. ANALYSIS

On judicial review, petitioners advance two assignments of error, one substantive and the other procedural. In their first assignment, petitioners challenge the substance of LCDC's order, arguing that the agency erred in construing its rules in evaluating whether the go-below amendment would maintain the "existing commercial agricultural enterprise" in the area. In the alternative, they contend that LCDC's finding that, in fact, the amendment would satisfy that standard is not supported by substantial evidence. In their second assignment, petitioners contend that LCDC's order is procedurally defective in that it employed a "delayed signing" process for the approval of the go-below amendment. We address each assignment in turn.

A. *First assignment of error: "Existing commercial agricultural enterprise"*

Petitioners contend that LCDC erred in concluding that a 40-acre minimum parcel size for the subject area would maintain the "existing commercial agricultural enterprise" in the area. According to petitioners, LCDC erred in construing that phrase to refer to something other than the county's "dominant" existing commercial agricultural enterprise. "Despite recognition that the vast majority of farm acreage in the county is dedicated to wheat production," petitioners note, "all the analysis was focused on the viability and growth of the minor and emerging vineyard and winery agricultural enterprise." Because of that focus, petitioners complain, LCDC erroneously analyzed the size of parcels desirable for vineyards, instead of the size required for dryland wheat production. Petitioners concede that "some small orchards and vineyards exist in the area." They nevertheless insist that, because the relevant administrative rules are concerned only with maintaining the county's *dominant* agricultural enterprise, the existence of other, minor agricultural enterprises is irrelevant.

In the alternative, petitioners contend that LCDC's finding that a 40-acre minimum parcel size is appropriate to maintain the vineyard enterprise is not supported by substantial evidence. That is so, they argue, because the record shows that many vineyards are situated on parcels larger

than 40 acres. Furthermore, they contend, there is substantial evidence in the record to demonstrate that a minimum parcel size larger than 40 acres would not "jeopardize the viability of new vineyards."

LCDC responds that petitioners' contention that the phrase "existing commercial agricultural enterprise" refers to the county's "dominant" enterprise is unpreserved. On the merits, LCDC notes that the disputed phrase appears in its own administrative rules. As a result, LCDC contends, its interpretation of those rules need only be plausible to be entitled to deference on judicial review. As to whether it correctly determined, as a factual matter, that a 40-acre minimum parcel size is appropriate, LCDC contends that its finding is supported by substantial evidence in the record. Applicants largely echo the responses of LCDC.

■ We begin with LCDC's preservation argument. LCDC contends that petitioners failed to advance earlier the particular interpretation of the administrative rule at issue that they are proposing on review. Petitioners respond that they have consistently focused on the appropriate interpretation of the phrase "existing commercial agricultural enterprise" throughout this case. In any event, they argue, they could not anticipate the particular interpretation that LCDC would employ until it actually did so in its order.

We readily conclude that the issue has been preserved. As petitioners point out, they consistently contested—on one ground or another—whether the go-below amendment would adversely affect "existing commercial agricultural enterprise." Whether they shifted their interpretive focus, the meaning of the rule plainly was put before LCDC, and that issue is properly before us now. *Gadda v. Gadda*, 341 Or 1, 7-8, 136 P3d 1099 (2006) (shift in focus of interpretation of statute insufficient to defeat preservation); *State v. Lopez-Delgado*, 223 Or App 752, 755, 196 P3d 104 (2008) (same).

■■ Turning to the merits, we begin with whether LCDC erred in construing the phrase "existing commercial agricultural enterprise." If an agency has "erroneously interpreted a provision of law," we are required to "[s]et aside or modify the order" or "[r]emand the case to the agency for further action

under a correct interpretation of the provision of law." ORS 183.482(8)(a). When the provision of law at issue is an agency's interpretation of its own rule, however, we must defer to that interpretation if it is plausible—that is, not "inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law." *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).

The disputed phrase in this case—"existing commercial agricultural enterprise"—appears in administrative rules promulgated by LCDC. Those rules are part of the larger regulatory framework relating to the state's agricultural lands. ORS 215.780(1) establishes a minimum parcel size of at least 160 acres for land zoned EFU and designated as rangeland, and at least 80 acres for land zoned EFU and not designated as rangeland. ORS 215.780(2), however, allows a county to adopt a lower minimum parcel size for land zoned EFU "[b]y demonstrating to the Land Conservation and Development Commission that it can do so while continuing to meet the requirements of ORS 215.243 * * * and the land use planning goals adopted under ORS 197.230."

ORS 215.243 sets forth Oregon's agricultural land use policy,[1] and the land use planning goal promulgated by LCDC to effectuate that policy—"Goal 3"—provides, in part:

---

[1] ORS 215.243 provides:

"The Legislative Assembly finds and declares that:

"(1) Open land used for agricultural use is an efficient means of conserving natural resources that constitute an important physical, social, aesthetic and economic asset to all of the people of this state, whether living in rural, urban or metropolitan areas of the state.

"(2) The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation.

"(3) Expansion of urban development into rural areas is a matter of public concern because of the unnecessary increases in costs of community services, conflicts between farm and urban activities and the loss of open space and natural beauty around urban centers occurring as the result of such expansion.

"(4) Exclusive farm use zoning as provided by law, substantially limits alternatives to the use of rural land and, with the importance of rural lands to the public, justifies incentives and privileges offered to encourage owners of rural lands to hold such lands in exclusive farm use zones."

"Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space and with the state's agricultural land use policy expressed in ORS 215.243 and ORS 215.700.

"* * * * *

"Counties shall establish minimum sizes for new lots or parcels in each agricultural land designation. The minimum parcel size established for farm uses in farmland zones shall be consistent with applicable statutes. If a county proposes a minimum lot or parcel size less than 80 acres, or 160 acres for rangeland, the minimum shall be appropriate to maintain the *existing commercial agricultural enterprise* within the area and meet the requirements of ORS 215.243."

(Emphasis added.) LCDC promulgated OAR 660-033-0100 to detail the standards and procedure for a county to establish a minimum parcel size on agricultural land. That rule provides, in part:

"(1) Counties shall establish minimum sizes for new parcels for land zoned for exclusive farm use. For land not designated rangeland, the minimum parcel size shall be at least 80 acres. For land designated rangeland, the minimum parcel size shall be at least 160 acres.

"(2) A county may adopt a minimum parcel size lower than that described in section (1) of this rule by demonstrating to [LCDC] that it can do so while continuing to meet the requirements of ORS 215.243 and that parcel sizes below the 80 or 160 acre minimum sizes are appropriate to maintain the *existing commercial agricultural enterprise* within an area. This standard is intended to prevent division of farmland into parcels that are too small to contribute to commercial agriculture in an area. This standard does not require that every new parcel created be as large as existing farms or ranches in an area. The minimum parcel size may allow creation of parcels smaller than the size of existing farms or ranches. However, the minimum parcel size shall be large enough to keep commercial farms and ranches in the area successful and not contribute to their decline. * * *

"(3) To determine a minimum parcel size under this rule, the county shall complete the following steps:

"(a) Identify different agricultural areas within the county, if any;

"(b) Determine the nature of the *commercial agricultural enterprise* in the county or within areas of the county;

"(c) Identify the type(s) and size(s) of farms or ranches that comprise this *commercial agricultural enterprise*; and

"(d) Determine the minimum size for new parcels that will maintain this *commercial agricultural enterprise*.

"(4) To determine whether there are distinct agricultural areas in a county, the county should consider soils, topography and land forms, land use patterns, farm sizes, ranch sizes and field sizes, acreage devoted to principal crops, and grazing areas and accepted farming practices for the principal crops and types of livestock.

"(5) To determine the nature of the *existing commercial agricultural enterprise* within an area, a county shall identify the following characteristics of farms and ranches in the area: Type and size of farms and ranches, size of fields or other parts, acreage devoted to principal crops, the relative contribution of the different types and sizes of farms and ranches to the county's gross farm sales, and their contribution to local processors and established farm markets. The following sources may assist in a county's analysis: The most recent Census of Agriculture and special tabulations from the census developed by Oregon State University, the Oregon Department of Agriculture, the United States Department of Agriculture's Agricultural Stabilization and Conservation Service (AACS), Soil and Water Conservation Districts, the Oregon State University Extension Service and the county assessors office.

"(6) To determine the minimum parcel size, a county shall evaluate available data and choose a size that maintains the *existing commercial agricultural enterprise* within the county or within each area of the county. In areas where the size of commercial farms and ranches is mixed, and the size of parcels needed to maintain those commercial farms and ranches varies, the county shall not choose a minimum parcel size that allows larger farms, lots or parcels to be divided to the size of the smallest farms, lots or parcels in the area. The activities of the larger as well as smaller holdings must be maintained.

"(7) A minimum size for new parcels for farm use does not mean that dwellings may be approved automatically on parcels that satisfy the minimum parcel size for the area. New dwellings in conjunction with farm use shall satisfy the criteria for such dwellings * * *.

"* * * * *

"(9) A county may choose to establish a different minimum parcel size for distinct commercial agricultural areas of the county. The appropriate minimum lot or parcel size for each area shall reflect the type of commercial agriculture in the area, consistent with sections (3) - (6) of this rule."

OAR 660-033-0100 (emphasis added). OAR 660-033-0020(2) provides:

"(a) 'Commercial Agricultural Enterprise' consists of farm operations that will:

"(A) Contribute in a substantial way to the area's existing agricultural economy; and

"(B) Help maintain agricultural processors and established farm markets.

"(b) When determining whether a farm is part of the commercial agricultural enterprise, not only what is produced, but how much and how it is marketed shall be considered. These are important factors because of the intent of Goal 3 to maintain the agricultural economy of the state."

As we have noted, petitioners contend that LCDC erroneously construed the phrase "existing commercial agricultural enterprise" in Goal 3 and OAR 660-033-0100(2) by focusing on what they characterize as "the proposed *new* agricultural enterprise—production of wine grapes—and what size parcels would be required to make that enterprise commercially viable." (Italics and underscoring in original.) In petitioners' view, focusing on such new endeavors is contrary to the wording of the rule, because growing grapes is not an "existing commercial agricultural enterprise" within the meaning of the rule.

Petitioners arrive at that conclusion by emphasizing the wording of the rule, in particular, its reference to *"existing"* commercial agricultural enterprise. According to petitioners, because the dominant commercial agricultural enterprise in the area is dryland wheat farming, for all intents and purposes, that is the only "existing" commercial agricultural enterprise. Petitioners concede that other commercial agricultural activities exist in the area, including small orchards and vineyards. Their apparent contention is that, because "the bulk of the acreage is in wheat," that is the only commercial agricultural enterprise that counts. It bears noting that, in making that argument, petitioners neither cite nor apply *Don't Waste Oregon Com.* and the deferential standard that it requires us to employ. They simply assert that theirs is the only tenable construction of LCDC's own administrative rule.

Petitioners' failure to grapple with the deferential standard of *Don't Waste Oregon Com.* is fatal to their contentions on review. At the outset, we are unpersuaded that they are accurately characterizing LCDC's order. We do not read the order to hold that the *only* relevant commercial agricultural enterprise is the growing of wine grapes. As we have noted, LCDC found that "[e]xisting, successful vineyards are located nearby and adjacent to the subject area." LCDC does, as petitioners note, analyze at some length the appropriate minimum parcel size to sustain a successful vineyard. Contrary to petitioners' assertion, however, LCDC did not focus on vineyards to the exclusion of the county's other agricultural enterprises. Both LCDC's order and the DLCD Director's Report noted that small and large farms surround the subject area and that the reduced minimum parcel size must maintain all of them. LCDC stated that a 40-acre minimum parcel size for the subject area would "maintain existing commercial agricultural *enterprises* within the area." (Emphasis added.) In its rejection of the 20-acre minimum parcel size, LCDC cited DLCD's conclusion "that a 20-acre parcel is vulnerable to rural residential activity not related to agriculture." It seems clear to us that LCDC construed the disputed phrase to refer to the broader mix of existing commercial agricultural enterprises in and around the subject area, not just the single enterprise of growing wine grapes.

LCDC's interpretation of the rule in that regard seems, at the very least, to be plausible and not inconsistent with the wording of the rule itself or any other applicable sources of law. Nothing in the phrase "existing commercial agricultural enterprise" requires LCDC to focus solely on the enterprise to which "the bulk of the acreage" is devoted or to any other single economic activity. Petitioners' emphasis on the word "existing" is unavailing in that regard. Even petitioners concede that among the existing commercial agricultural activities in the area are small orchards and vineyards. The use of the word "existing," by itself, certainly does not suggest that those smaller enterprises do not count.

Nor does the use of the singular noun "enterprise" preclude LCDC from taking into account the current mix of multiple commercial agricultural activities in the area. The ordinary meaning of the term "enterprise" embraces both discrete undertakings and entire systems of economic activity. *See Webster's Third New Int'l Dictionary* 757 (unabridged ed 2002) (defining "enterprise" to mean, among other things, "a plan or design for a venture or undertaking," a "unit of economic organization or activity," and "any systemic purposeful activity or type of activity ‹agriculture is the principal economic ~ among these people›").

Consistently with that broader use of the term, related administrative rules make clear that there may be more than one agricultural activity that makes up the agricultural "enterprise" in the area. OAR 660-033-0100(6), for example, provides that, "[i]n areas where the size of commercial farms and ranches is mixed, and the size of parcels needed to maintain those commercial farms and ranches varies," the county must select a minimum parcel size that will maintain the smaller *and* larger ones. In setting a minimum parcel size, the rules direct a county "[t]o determine whether there are distinct agricultural areas in [the] county," OAR 660-033-0100(4), and to identify, among other things, the "[t]ype and size of farms and ranches * * * [and] acreage devoted to principal crops," OAR 660-033-0100(5). Furthermore, the definition of "commercial agricultural enterprise" in OAR 660-033-0020(2) refers to "farm operations" (plural) that are part of "the area's existing agricultural economy" (singular) and "commercial agricultural enterprise" (also

singular). Those provisions anticipate that there may be more than one agricultural activity, even if it is referred to as one "enterprise." LCDC's consideration of a variety of agricultural activities as part of the area's "existing commercial agricultural enterprise" is not inconsistent with that context.

In short, LCDC's focus on determining an appropriate minimum parcel size for vineyards that does not undermine the other existing commercial agricultural enterprises in the surrounding area is not inconsistent with the relevant statutes and rules. Accordingly, LCDC's interpretation is entitled to deference.

■ We turn then to petitioners' alternative argument, that is, that LCDC erred in finding, as a factual matter, that a 40-acre minimum parcel size is appropriate for the subject area to maintain the "existing commercial agricultural enterprise within an area." OAR 660-033-0100(2). We will affirm LCDC's factual finding if "the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

To support their assertion that LCDC erred, petitioners point to the fact that the average size of Oregon Walla Walla Valley AVA vineyards is nearly 80 acres. Although it is true that the *mean* is almost 80 acres, the *median* is actually significantly lower. All but eight of the 31 Oregon Walla Walla Valley AVA vineyards are 40 acres or smaller in deeded acreage. Based on that information alone, a reasonable person could conclude that a 40-acre minimum is appropriate for the subject area to promote the commercial agricultural use of that property for vineyards. LCDC also concluded that that minimum will not contribute to the decline of the larger farms nearby. Given that the go-below amendment applies only to the subject area, and that parcels as small as 10 acres already exist near the subject area, a reasonable person could conclude that the minimum parcel size appropriate to sustain a successful vineyard (40 acres) is also appropriate to maintain the overall agricultural enterprise in the surrounding area. Accordingly, we cannot say that LCDC erred in making the factual finding that it did. We reject petitioners' first assignment of error.

B. *Second assignment of error: Delayed signing*

In their second assignment, petitioners advance a procedural challenge: Petitioners contend that LCDC erred in using a "delayed signing" process to approve the county's revised ordinance. According to petitioners, the delayed signing process effectively authorized the DLCD director to approve an ordinance that did not yet exist and deprived them of an opportunity to challenge the ordinance.

We must remand a case to an agency if we determine that the agency acted "[o]utside the range of discretion delegated to [it] by law" or "[i]nconsistent with an agency rule * * * or a prior agency practice." ORS 183.482(8)(b). In this case, petitioners have failed to identify how LCDC acted outside the range of discretion granted to it or inconsistently with any rule of law. As we have noted, LCDC approved the county's go-below amendment, subject to conditions, and then authorized the DLCD director to approve an ordinance that complies with those conditions. The fact that LCDC used the phrase "delayed signing" does not alter the fact that, in substance, it simply approved the amendment subject to conditions. We are aware of no statute or rule that precludes LCDC from doing that.

Affirmed.